Good morning, your honors. May it please the court. I'm Julia Olson on behalf of the 22 youth plaintiffs, many of whom are with us today in the courtroom. With the court's permission, I'd like to reserve five minutes for rebuttal. Very well. Thank you. We are here because the president rewrote energy law without statutory or constitutional authority to do so. And the district court mistakenly believed it lacked Article III power to redress the constitutional violations and the injuries to the plaintiffs that are undisputed in the case. The district court is wrong for three reasons. First, the district court assumed redressability was an all or nothing proposition and did not consider tailored relief as this court requires in cases like Day v. Henry and City and County of San Francisco v. Trump. Second, the traditional remedies plaintiffs seek fit well within the court's Article III authority when reviewing the legality of executive orders. And in fact, the request for relief here aligned precisely with the request for relief that the plaintiffs asked for in learning resources. And third, this is an executive order case which makes it different. Juliana was not an executive order case. And Juliana's redressability holding does not mean that every case touching on climate or energy policy is outside of the court's Article III authority. The ruling in that case is limited to the facts of that case, which was about the culmination of 50 years of government conduct and past harm not tied to any specific executive order directive. The district court here found that plaintiffs established injury in fact, traceability, and it also found that based on the evidence before it and through expert testimony, the injunctive relief would likely ameliorate plaintiff's injuries. That is different than Juliana. We respectfully request this court reverse the redressability ruling of the district court and remand. And I welcome any questions the court has and I'll dive right into Juliana and GB versus EPA, which the court decided last week. That's what I was gonna suggest that you do. So go for it. Great. So as standing always requires, there's a fact intensive inquiry into each case. And I suggest that the court here look to the conduct being challenged. And again, this is about specific executive order provisions that were just issued last year that rewrite laws that Congress has passed since the Juliana decision was issued in 2020. The plaintiffs filed suit here to prevent prospective harm and seek declaratory injunctive relief against those three specific orders. And so that puts this case directly in the learning resources camp of article three review. GB versus EPA, which is the most recent court case to interpret Juliana does not control here for several reasons. One, it's not about the second prong of redressability as this court has articulated in Juliana. It's about traceability and therefore redressability. That case was not about specific executive orders that are being actively implemented today. And it wasn't a due process case. It was an equal protection discrimination case against what this court said was an economic tool that EPA was no longer using. And therefore it was speculative whether there would be future harm. And importantly, in the court's analysis, the court relied on the executive order 14154, the plaintiff's challenge here. And the court said that given OMB's implementation of executive order 14154, EPA was no longer planning to regulate greenhouse gas emissions at all. And EPA had been instructed to no longer do an economic analysis about the cost of greenhouse gas pollution. Therefore, the discounting tool was not going to be used because EPA is no longer even considering the economic harms related to greenhouse gas pollution. And so for all of those reasons, the court said it was unduly speculative whether EPA would continue using the economic tool that plaintiffs challenged as discriminatory or not. I think the case that's most instructive and we've briefed it so I won't go into detail, but it's the Day versus Henry case at page 968, which really provides a basis for article three, declaratory and injunctive relief. And that case was about a really wide ranging statutory and regulatory scheme that was complex in nature. I also want to point to Diamond in terms of addressability. So Diamond Alternative Energy set the bar for redress very low. $1 worth of harm relieved is enough to walk through the courthouse doors. And here the district court said in its ruling based on the allegations in the complaint and based on the evidence before it and the preliminary injunction hearing, that indeed if $1 of relief is sufficient, the reduction of 205 million metric tons per year and by 2035, 505 million metric tons of injury causing greenhouse gas should be two. So the question is not that there's not traceability or harm or a remedy that would relieve the harm to the plaintiffs. The question here is just whether the article three court has power to hear the case and issue a remedy. And one thing we've researched to the extent we can to identify any case by this court or the Supreme Court where article three jurisdiction has been withheld on the basis that the court lacks power to review an executive order. And we haven't been able to find any. And I think this court's decision in city and county of San Francisco versus Trump, as well as Washington versus Trump, both executive order cases say that the court, that beyond question, the federal judiciary retains the authority to adjudicate constitutional challenges to executive action. And so we think there's a clear power of article three here to provide redress and to remand for the merits. On learning resources, which is the Supreme Court's central case on executive orders today, the Supreme Court rejected the arguments that the defendants made there that are very similar to the arguments made here. So the Supreme Court said that the widespread and global effect of the tariff executive orders was not a basis to decline article three review. It rejected the foreign policy and national and economic security defenses the government made. It also spoke to this issue that the district court was concerned with, and which was a misreading of plaintiffs' request for relief in this case. And that was, the government has argued here and in the tariff case, that plaintiffs sought to return policy to the Biden-era policy. And that's emphatically not what we are seeking, your honors. What we're seeking is a return to the laws passed by Congress that the president is required under article two to faithfully execute, instead of rewriting energy policy. And I'd just point to EO 14154, section seven, which is entitled Terminating the Green New Deal, which is the president's direction to the executive branch to withhold funds that were dedicated by, appropriated by Congress to, for instance, replace diesel school buses with electric school buses at schools around the country. And one of the plaintiffs here, J.M., had helped win one of those grants from EPA, and that money is still being withheld pursuant to the president's directives. The other issue that the court was concerned about was the manageability of a remedy. And I, so the court mischaracterized in part, or misunderstood in part, the relief plaintiffs seek. Plaintiffs do not seek an order that itemizes hundreds of illegal policies or actions, as the district court indicated in his opinion. What plaintiffs seek is for energy policy to be restored to the policy that Congress enacted. And again, since 2020, there have been three major pieces of legislation that address energy and climate. And those pieces of legislation have moved the country intentionally towards renewable energy, to expand it, to electrify the transportation system, and very intentionally, Congress's policy has been to reduce greenhouse gas pollution. And that's the law as it exists today. And the president, via these executive orders, is attempting to rewrite that law. And that is illegal and reviewable by the court. So, in terms of the injunctive relief, the prospective injunctive relief that plaintiffs seek is straightforward. In learning resources at page 644, footnote four, I'm sorry, the injunctive relief can be fully implemented by the defendants. And I think the amicus brief by the former political officials stands for the proposition that government agencies and officials know how to comply with the law, and know how to execute an order that the district court may issue. Where the district court was most stuck was on the retrospective relief. So, everything that has happened to implement the executive orders to date. And I think, again, turning to learning resources, the court can reject sort of that unmanageability decision that the district court made for several reasons. So, the tariff orders, the executive orders, there were initially five, but ultimately many more. And they pertained to, or they directed conduct by nine different agencies and officials. And the Court of International Trade right now is in the process of refunding $165 billion, and has directed the Customs and Border Protection Agency to reliquidate custom entries from 53 million shipments that have come into the United States. And that border agency doesn't have the tools available to it to even do such a thing. And so, it's built an entirely new system to comply with the Supreme Court's declaratory judgment, and then the lower court's injunctive relief. And in- But is that, I mean, as I recall, in Giuliana, that was one of the concerns, was that you basically have to build a whole system to monitor. Is that what you're saying would have to happen here? Is that, you know, you get a district court and it says, I'm hereby enjoining you from implementing these EOs. And then, an agency does something that you all don't like, and then you come, then you go to the district court and say, they're doing this, and they're doing this because of the EO. The federal government says, no, we're just doing it because, for some other reason, we think this is a faithful application of the statutory law. And then the district court has to do what? They just said, this is what I think the district court was worried about, is that that's the managerial management problem that I think the district court was concerned about. What's your answer to that? As from a practical perspective, I mean, it does seem like this could just be something that goes on and on, a little bit like a, it's not a ruling that the district court would just make once, because you've got a massive federal government that's doing a bunch of things, including probably outfits that would be doing things that I assume that your plaintiffs wouldn't like, and the federal government would be saying, we're not doing them because of the EOs, and you'd be saying, yes, you are, and you were told you couldn't do this by a district court, and how did, what is your answer to that concern? Yeah, so two answers to that, Your Honor, thank you. The first is, is that the laws enacted by Congress that give the president and the executive agencies discretion to take action with respect to energy policy or climate policy, the president and his agencies can still act. They just need to act under law and specifically point to the congressional authority that gives it the ability to act. Okay, so, but they do that, and this is in the world where the district court had granted the relief you seek, which is to get rid of the EOs, and the federal government says, that's what we're doing. We're acting consistent, here's our argument, and instead of bringing a challenge under the APA or something like that, I assume you'd go back and say, we're seeking contempt action for having violated the court's order because we think that they are sort of secretly, still implementing the EO. No, Your Honor, I don't think that's how it works. So, first, with respect to the APA, plaintiffs can't bring this case in response to a specific regulatory action by an agency pursuant to a statute, because this is a challenge to an executive order, just as the learning resources cases were a challenge to five executive orders. So, we're in the right court, here, and there's a process, if the plaintiffs win declaratory judgment and an injunction that these unconstitutional provisions or ultra-virus provisions may not be implemented, then it's incumbent upon plaintiffs to monitor the compliance with that specific order, and again, it doesn't preclude the president and his agencies from acting under statutory authority that they have been given, and what happens- Right, but I just want to, I understand, I think we all understand the theoretical thing, that's what kind of, I think that we all understand that theoretically, they can still continue, they being the federal government, still continue to take some of these actions that they might take without doing it because of the EO, but as a practical, so theoretically, they could do that, but it's in the eye of the beholder. You can imagine there will be situations where your plaintiffs will think, no, there's still ultra-virus actions that the agencies are taking, and we think they're doing the same thing that they would be doing, that we were told they couldn't do under the EO, and the federal government will be saying, we don't think they're ultra-virus, and normally, that process would, when the agency took the action, that would usually be something like an APA challenge in response to the agency's action, not the EO, but here, wouldn't you just go back to the federal district court and say, they're violating your order, and we want a contempt? So two points, and then I would like to reserve time. One is that this court is bound by learning resources where the chief justice said, we do not speculate on hypothetical cases not before us, and two, the fact that defendants may violate an order of the district court and require contempt proceedings is not a basis for the court not accepting its Article III authority to hear cases where injury in fact, traceability, and the likelihood of redress have been established through the allegations in the complaint and in front of the district court, and with respect, I'd like to reserve time. And Ms. Dodds, if you could go ahead and give her five minutes for rebuttal. Thank you, your honors. You got it.  Good morning, John Adams on behalf of the United States, and may it please the court. This morning, I will present argument on the threshold issues under Rule 12b-1, while my friend, the Solicitor General of Montana will present arguments on the merits under Rule 12b-6. Just like this court's precedents in GB decided last week and Juliana decided in 2020, this case is another climate change case with sprawling and speculative legal theories and claims. Plaintiffs here challenge three executive orders that form the energy policy of the executive branch. First, unleashing American Energy Executive Order encourages energy exploration and production to support an abundant and reliable supply of energy necessary for our economic prosperity and for our national security. Second, declaring a National Energy Emergency Executive Order announces policies to facilitate the production of energy production consistent with those economic and national security policy goals I just mentioned. And third, the beautiful Clean Coal Executive Order supports the coal industry to meet growing domestic energy demands. In sum, these executive orders prioritize agency discretion related to energy policy and in so doing, require or encourage federal agencies to identify plans, consult with federal partners, convene committees, review agency actions, and to make reports. Displeased with the current policy of the administration to make American energy dominant, plaintiffs bring substantive due process claims and ultraviarious claims. However, at the threshold, plaintiffs' case fails to establish any of the elements or standing required to support a case or controversy under the Constitution. I will begin by addressing the redressability element understanding before turning to causation and injury in fact, each of which this court should reach. On redressability, as this court knows, plaintiffs have to satisfy two prongs. First, they must show that the request of relief is substantially likely to redress their claim injuries and second, that the relief is within this court's Article III power. The crux of plaintiff's remedy here is an injunction against the challenged executive orders from the executive branch from implementing or enforcing the executive orders. On the first prong, substantially likely to redress the plaintiff's claimed injuries. An injunction in joining these three executive orders will not substantially redress plaintiff's claimed injuries here for at least two reasons. First, the federal agencies have other authorities available to them outside of the broad policy goals promulgated in the executive orders. And while I could list dozens of examples in each executive order, I'll just highlight one that shows the plaintiff's problem here. In declaring a national energy, excuse me, in the beautiful clean coal executive order in Section 5, the President has directed the Secretary of Interior to prioritize coal leasing. As this court recognized in Juliana at Pennside 1170, the Department of Interior and the Secretary of Interior have expressed congressional authority under 30 U.S.C. Section 201 to prioritize coal leasing, consistent with the property clause of the Constitution. In other words, even in the absence of this executive order, the Secretary of Interior could still take the same actions that plaintiff's claim caused their injury. The second reason that plaintiffs cannot satisfy the first prong of redressability is futility. As this court recognized in Juliana, the plaintiffs there sought far more sweeping relief to be able to redress their claimed injuries, but yet this court in Juliana stated that it was skeptical that any relief that it could provide in that court would be able to provide plaintiffs any type of satisfaction for their claimed injuries. If this court was skeptical in Juliana about the far sweeping emissions at issue in that case, this court should be even more skeptical in this case that challenges just three executive orders. Turning to the second prong of redressability, plaintiffs cannot establish that the relief that they seek is within this court's Article III power. Primarily, it's the separation of powers concerns that undergirded this court's decision in Juliana. This court cannot enjoin the executive branch from exercising express congressional authority. The relief plaintiffs seek here require a balancing of competing economic, social, and political forces that must be made to our elected officials, both within the legislative branch and within the executive branch. The relief that plaintiffs seek here is also inappropriate under the second prong because there is neither a constitutional directive nor a legal standard to guide this court's exercise of equity. As a district court below recognizing, Judge Van Dyck, this is going to your question earlier, what does it mean to enjoin the executive branch from, quote, implementing any of these executive orders? We would be here as a district judge recognized throughout the collective lifetimes of our lives to be able to figure out what it is that the plaintiffs are seeking to require here. In reality, as this court reckons- Counsel, what, I mean, plaintiff's response is, well, there are lots of cases that challenge executive orders successfully. What do you think materially distinguishes this case from those others? A few things, Your Honor. And first, there's no argument made here that plaintiffs or no one can challenge an executive order. The cases that plaintiffs rely upon dealing with executive orders have some type of immediate and automatic effect. Plaintiffs, for example, cite the learning resources v. Trump decision, the tariffs case, where there the executive order imposed ad valorem tariffs on plaintiffs that had to pay those tariffs. So there's immediate and automatic effect in that particular case. And that type of automatic and direct effect is absent here. Notably, plaintiffs rely on learning resources in their reply brief. If it's one of their lead cases, but that's not a standing case. The Supreme Court did not even analyze standing in that decision. In other words, plaintiff's lead case to establish standing is not a standing case. So that's one distinction, Your Honor. And moreover, as this court recognized in Juliana, any effective plan would necessarily require a host of complex policy decisions entrusted to our executive and legislative branches. And indeed, Congress has spoken about the proper way to review the types of issues that plaintiffs are complaining about. As United States points out in its answering brief at pages 37 and 38, there are statutory frameworks, standards, procedural requirements, judicial review provisions for agency actions, namely within the Administrative Procedure Act or in the Clean Air Act that plaintiffs studiously avoid and omit from their complaint because they're not challenging any agency action. They're challenging policies from the executive branch. Your Honor, for the redressability prong, this court can affirm the order of the District Court on this straightforward basis. That was the decision in Juliana. But I would encourage this court to move on to the other two elements of standing, causation and injury in fact. I would submit that the District Court would have found that plaintiffs had not established causation either if it had the benefit of this court's decision in GB issued last week, which is directly on point for the causation that plaintiffs failed to meet. As this court is well aware to establish causation under Article III, plaintiffs must be able to fairly trace their challenge action, not to the result of third parties, not before this court, but they challenged executive orders. Plaintiffs cannot do so. They have a traceability problem that's expressly laid out in GB and this court can refer the GB decision to see how they failed to do so. I would point this court specifically to page 24, the slip opinion of GB that bulletizes all the different actions that plaintiffs need to connect there in GB that they needed to connect in order to establish a traceability between the challenge action and the claimed harm in that case and it's the same type of analysis here. There are at least five links in the causal chain that plaintiffs cannot establish. They challenge the executive orders, which are general policy promulgations. The executive orders will in turn create agency actions that are not before the court. The agency actions in turn will prompt private industry to produce fossil fuels that will eventually create carbon dioxide emissions that will reach the atmosphere that it will in turn allegedly cause climate change that will finally lead to the alleged injuries here. That is a causal train that is too attenuated to establish article three injury in this particular case and there are two other problems with plaintiff's causation problem that we detail in our answering brief. That is namely third parties that are not before this court. This court should affirm its decision in Bellin which stated that climate change inherently involves independent third parties worldwide that are responsible for changes contributing to plaintiff's injuries. Those third parties are not before this court and plaintiffs cannot establish causation for that reason. Plaintiffs also face a substantiality problem. The challenge executive orders that they challenge are not the substantial part of their claimed injuries. Can you respond to plaintiff's argument about, for example, the funding pause, which is a specific action that they're contending is traceable to the executive order? Yes, Your Honor. That allegation is related to claim three of their ultra-virus claims. They face merits arguments, a 12B6 that my friend will explain about Dalton forecloses their constitutional arguments. But at the threshold, plaintiffs allege that count three, that it's ultra-virus for the president to unleash American energy and have type of policy interactions with the Environmental Protection Agency. But importantly, they don't allege that they are recipients of those funds or that they're federal employees. They have no standing to bring that claim. And that particular claim also emanates from section seven of the unleashing American energy executive order. If you look at the district court's opinion at footnote one, the district court cites a case from the District of Rhode Island that challenges these funding decisions. And what's in that case, which is notably absent in this case, is an agency action. Specifically, the Office of Management and Budget issued a memorandum in that case that was challenged. And that's the type of agency action that's not before this court, which is fatal to plaintiff's ability to establish standing in this case. If I may, Your Honor, with my time left, I'd like to talk about injury in fact, and this court should reach an injury in fact element and conclude that plaintiffs have not satisfied this particular element. To establish the injury in fact, the plaintiff must plausibly allege that the injuries are concrete, particularized, actual, and imminent. Central to this concept of particularized injury as the Supreme Court recognized in Lujan is that the plaintiff must be affected in a personal and individual way and seek relief that is directly and tangibly related to the plaintiff that is meaningfully distinct than the public at large. I would point this court to Chief Justice Roberts' opinion in Massachusetts v. EPA, that talks about how plaintiffs have failed to satisfy the particularity requirement for this element. As he notes, alleged climate change is a phenomenon that is harmful to humanity at large. And the redress that plaintiffs seek in climate change cases is focused no more on them than the public at large. It is literally to change the atmosphere of the world. Changing the atmosphere of the world is outside of this court's Article III power. And even if we assume, as Juliana appears to do, that existing or extant climate change somehow creates localized effects that affect the injuries in a concrete way, that's distinct than the injury that the plaintiffs allege in this case. It's a novel injury. Plaintiffs allege that every ton of carbon dioxide emission emitted into the atmosphere inflicts an injury anew to them that this court can redress through its Article III power. Are you saying there can never be a climate change case? There can never be a plaintiff who suffers a particularized injury because it affects everyone? I think in this particular circumstance, Your Honor, yes, I am saying that. And there's a distinction between a concrete injury, which the United States does not discount through the allegations of plaintiff's complaint, and a constitutional injury under Article III. And that particularized injury, as Chief Justice Roberts notes in Massachusetts v. EPA, needs to be particularized and needs to be meaningfully distinct for the plaintiffs and not some type of broad policy-making goal that the court can exercise its Article III authority to be able to redress. And just going back, Your Honor, and just looking at this particular case, and just to highlight this point, the plaintiff's theory of injury here is novel and distinct than Juliana. It's the allegation that every ton of carbon dioxide emission that enters the atmosphere inflicts an injury anew, and there's no limiting principle to that allegation. That means that a ton of carbon dioxide emission emitted into the air in China just 10 minutes ago inflicts an injury anew that this court can address to a plaintiff in Montana or a plaintiff in Florida is well outside the bounds of the court's Article III power. And withstanding with all the elements, I would just leave this court with this. As the Supreme Court recognized in Lujan, standing is not some type of academic exercise in the conceivable, as plaintiffs seem to make it. It is a bedrock principle grounded in our constitutional structure. This court should affirm that principle and affirm the order of the district court by concluding that plaintiffs have failed to establish any of the elements of standing. And just with my minute lesson, not to belabor the point, Your Honor, for the declaratory relief on redressability that we heard from Ms. Olson this morning, GB expressly forecloses it, this court's decision in GB. GB says, quote, circuit precedent forecloses plaintiff's request for declaratory relief, and the same is true here. And then before I close, I would just encourage the court to also reach an alternative argument on the merits of plaintiff's substantive due process claim, which is foreclosed by binding precedent, as my friend will explain. This court has issued a few decisions now on climate change cases and standing, and that jurisprudence doesn't seem to have taken root. And as an alternative argument, this court should reach the merits and hold that there is no substantive due process right to the plaintiff's preferred climate because it is. But you would agree to do that, we have to find their standing? I would agree, Your Honor. No, you probably don't. You probably don't want to bargain. Or as a concurrence. Okay. Yeah, I mean, be careful what you ask for. I mean, you want us not to find no standing, then to get there, I think we have to do that, so. Understood, Your Honor. And with that, unless the court has any questions, rest of my papers. All right, thank you very much, counsel. So you've got five and a little change left over by the other counsel there. Good morning, Your Honors. May it please the court. Montana Solicitor General Christian Corrigan for the State Intervenors. As my friend from the United States said, I'd like to cover why the court can alternatively affirm dismissal under Rule 12b-6. And this is, again, this is assuming their standing. Assuming their standing, Your Honor. Okay, fair. First, the plaintiff's ultra-various challenges to the executive orders, rather than the allegedly illegal agency actions, is improper. Second, the plaintiffs have no constitutional right to interfere with federal energy policy, much less a fundamental one. Nor can their state constitutional rights give them substantive due process rights under federal law. Finally, plaintiffs cannot satisfy the state-created danger doctrine because their claims lack affirmative state action and particularized harms. Now, turning first to ultra-various claims 3, 4, and 5. First, under the Supreme Court state order in AFGE, because the executive orders merely instruct agencies to implement policy priorities and contain a savings clause, the executive orders cannot be challenged. And even if an ultra-various claim were available, the EOs lack sufficient detail to qualify for review. And therein lies the fundamental problem. There's no link, as my friend said from the United States, between the executive orders and these allegedly illegal agency actions. What plaintiffs are actually attempting to do is circumvent both the strictures of the Administrative Procedures Act and the very limited statutory ultra-various review against agencies from Nuclear Regulatory Commission and Dalton. Plaintiffs toss out a number of allegedly illegal statutory violations by federal agencies, but they don't bring challenges to any of these agency actions under the APA or the Clean Air Act, and instead attempt to enjoin the president's executive order. There's a reason why the plaintiffs avoid directly challenging these specific agency actions they dislike. Ultra-various review under Nuclear Regulatory Commission rarely succeeds against an agency. It is a Hail Mary, as the Supreme Court said. An APA claim would also require them to satisfy its strictures and the zone of interest test. Now, if I could get to Judge Sung's question about the pausing of the Inflation Reduction Act funds in Section 7 that my friend on the other side brought up. As my friend from the United States said, the plaintiffs don't allege that they're recipients, and that's a problem because they're likely not the proper party to bring a claim to challenge the lack of distributing grants or other distributions. They likely need to bring APA claims and satisfy both standing as well as the zone of interest test. And then my friends on the other side cited in their reply brief this court's recent decision in Pasito dealing with the refugee program. But there, even though the district court entertained ultra-various and APA claims against the executive order, this court's decision actually differentiated between the two. This court said that the executive order, which temporarily paused the program, was distinct under the APA from the actual agency action which terminated the program. And the agency action which terminated the program, which was not present in the executive order, that was final agency action, not the executive order which just temporarily paused it. The next point I would make in response to that is that a claim under any particular grant or contract would run headlong into the Supreme Court's decision in Department of Education versus California. That if it is a claim that money needs to be paid out for a grant in the form of a contractual claim, the APA may not even be the proper cause of action. It may be a Tucker Act claim that would have to be brought in the Court of Federal Claims. And that gets to the problem with what plaintiffs are doing here. They are challenging, in a sense, everything and nothing under the executive orders at the same time. They're sort of throwing out broad complaints about various statutes without challenging any particular agency action. Now, if the court doesn't have any questions about the specific provisions, I will turn briefly with my one minute left to their substantive due process claims. The Supreme Court has never recognized anything close to their alleged rights. The claimant doesn't implicate personal liberty or privacy, and they asked this court to engage in the freewheeling judicial policymaking that the Supreme Court rejected in Dobbs. As the Supreme Court said in Collins, the due process clause is phrased as a limitation on the state's power to act, not as a guarantee of certain minimum levels of safety and security. And here, ultimately, their complaint is about a lack of regulation, about the administration's lack of regulation of fossil fuels and climate change. That is not the type of affirmative action that's required for a deprivation of individual liberty, individual privacy, or any of the rights that have any of the substantive due process cases that have been recognized by the Supreme Court, or Bergefell, Ingram, Vacco, Mirabelli, the cases that are cited by the plaintiffs. None of them are on point. And finally, I would just add with my time that for the similar reasons, they cannot satisfy the state-created danger doctrine for similar reasons under Collins, because this court's precedents make clear that affirmative state action that exposes a broad swath of the public to a generalized danger cannot support a state-created danger claim. And I'd encourage the court, if it had to reach an alternative holding, to hold that the plaintiffs have no claims under Rule 12b-6. Thank you, counsel. Your Honors, I have three quick points in response, and then I'd like to conclude with a hypothetical. So first on learning resources, the President is trying to reinstate the tariffs, and the Supreme Court said that even though he couldn't do so under AIPA, he could do so under other authorities, and that did not preclude Article III review. On standing, the lower courts in learning resources and BAS did find Article III standing, and that was affirmed by the appellate court and the Supreme Court. Counsel referred to 30 U.S.C. 201 and said that it allowed the President to prioritize coal. That's not true, and that's precisely the type of merits issue that the district court should be allowed to resolve under his Article III authority. And we don't think the court should decide the merits at this juncture, but remand for a merits determination. Also, the President's executive orders are not subject to the APA. The President is not subject to the APA, so we cannot bring claims against his directives under the APA. And if in Diamond alternative- On that point, the injuries that you claim, though, are caused, is my understanding, by agency actions or failure to take action, correct? No, Your Honor, the- Well, if there's no agency action, what is the injury? The injury is that the President has directed the agencies to take action that is contrary to law, just as in the tariff executive orders, the President directed agencies and officials to implement tariffs that were contrary to his authority under AIPA. And really importantly here, Your Honor, the President's executive orders, unlike the tariff executive orders, do not cite to any congressional authority allowing him to issue the directives that are binding on the executive branch that he has issued, and that's part of what the lower court would review. And so, let me just turn to this hypothetical for a moment. So, the only way the court can hold that there's no Article III power here is to issue traditional relief would be for the court to say that any case involving climate injuries are unreviewable, and it would lead to the unreviewable discretion of executive action. So, to accept the implications of what counsel on the other side have said, imagine this. A President concerned with climate change issues executive orders, and those declare a climate and energy emergency. And then, he eliminates the gas, coal, and oil from the definition of energy resources. He then, by executive order, directs agencies and officials to block all permitting for oil, gas, and coal extraction as undue burdens on renewable energy. He directs the unleashing of wind, solar, renewable energy, and electrifying the transportation system. And he expedites renewable energy projects on federal lands, but he does everything to block oil, coal, and gas on federal public lands. The stated goal of the President is to drive a dagger through the heart of the fossil fuel religion, and he withholds funding appropriated by Congress to do so. So, can I ask you, so, it's a great hypothetical, but couldn't that all be, even assuming that you couldn't challenge those EOs, couldn't the actions that the agencies took in response to the EOs be challenged of the individual actions? Wouldn't those be able to be challenged? So, in other words, my question is, it wouldn't escape review, necessarily, when the agency actually went to do the thing that stopped coal on some, you know, and the argument was that's inconsistent with the statute, so the agency's acting arbitrarily and capriciously or outside the bounds of the statutory law. It could be challenged that way, right? So, if that's true, that sort of takes a lot of the bite out of your hypothetical. Your Honor, that would be true under any presidential executive order. The president himself does not make those things happen. The executive agency defendants and officials carry out the presidential directives, and as the court said as far back as Youngstown, the president's order does not direct that a congressional policy be executed in a manner prescribed by Congress. It directs that a presidential policy be executed in a manner prescribed by the president, and that is precisely what is subject to Article III review in this case, and I think there's no question that the states who have intervened in this case would. So, I ask you the opposite question, which is, under your view of what's challengeable as an executive order, what would not be challengeable? It seems like, you know, if the president said, I really want you to, you know, just a very short executive order, I really want you to do these statute, you know, to implement these statutes more quickly. You've all been kind of slow over there in the agency. Would that be challengeable? You know, it doesn't seem like he's saying you should do anything unlawful, although you can come up with arguments that it's unlawful. If you do this quickly, you'll do it badly, you know, but could that be challenged, or is your theory that, because their theory is that, not that all executive orders are not challengeable. That's not their theory. Their theory is that the executive order that specifically says you have to do something specific is challengeable, but a broad, generalized one, you have to basically wait until the agency implements it to see how they implement it and then challenge it. That seems to me one way you could characterize their theory. And so, does your theory allow for the fact that there would be some executive orders that are not challengeable, or is your theory that all of them are? You know, I think what you're speaking to is a merits question, and it implies that there is Article III authority to- But you'd always have standing to challenge any executive order. If a plaintiff has established injury and traceability, this, the courts, Article III courts, have Article III authority to actually do the analysis that you're talking about, looking and seeing, is there statutory authority for what the president has invoked? Because he doesn't state any in the preambles to these three executive orders, as he did in tariff orders and other orders. And so, it's up for Article III courts to review, does he have authority? We might, we could lose on the merits. The court might decide, oh, he has adequate authority to do all this. But what we've alleged, based on our extensive review of the law, is that he has acted outside of his statutory authority. And the separation of powers violations is so important here, because what we're talking about is the right to life and liberty of these children. And some of them have suffered life-threatening harm because of pollution and heat. And we're not just talking about climate change, we're talking about the direct air pollution that harms their lungs and their lives. And I see that I'm over time, so I'll conclude. And I thank you. We ask that the court reverse and remand to the district court. All right, thank you very much, counsel. Thank you to all the counsel for the very well-argued and briefed case. Very interesting case. This matter is submitted. So now, if people are gonna hang around for the life insurance case, you're welcome to do that. But if you're gonna leave, this would be a good time to do it.
judges: OWENS, VANDYKE, SUNG